# Richmond

## MARY AGNES ROANE v. FRANK ROANE, ET ALS.

December 3, 1951.

Record No. 3825.

Present, Hudgins, C. J., and Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Israel Steingold,* for the appellant.

*David Nelson Sutton, George P. DeHardit* and *C. S. Smith, Jr.,* for the appellees.

HUDGINS, C. J., delivered the opinion of the court.

Mary A. Roane, widow of Leland S. Roane, filed her bill in chancery against Frank Roane, Guy Roane, Earl S. Roane, Grace Sutton and Emma Webster (and their consorts), brothers and sisters of Leland S. Roane, and Doswell Franklin Roane, devisee of William Clyde Roane, another brother. The object of the suit was to compel specific performance of three contracts alleged to have been made by Grace Sutton, Earl S. Roane and Emma Webster, in which they promised and agreed to sell and convey certain undivided interests in 173 acres of land to complainant and her husband. The lower court entered a decree declaring complainant to be the owner, in fee, of a 1/14 undivided interest, and as widow of her husband, a life interest in a 3/7 undivided interest in said land. From this decree complainant obtained this appeal.

Complainant contends that the lower court should have awarded her a fee simple title to the entire 173 acres of land, and if the doctrine of survivorship was not applicable, then complainant should have been awarded a 1/2 undivided interest in fee, and a dower interest in the other 1/2.

The original bill alleged that Richard H. Roane died in 1926, intestate, seized and possessed of 173 acres of land known as "Farmville" and located near Cologne in King and Queen County, Virginia, leaving the following children: Leland Stanley Roane, Frank Roane, Guy Roane, Grace Sutton, Earl S. Roane, Emma Webster and William Clyde Roane, and a widow who

died January 19, 1928; that Leland S. Roane died on May 21, 1947, intestate, leaving a widow, Mary A. Roane, complainant, but no issue; that in 1937 complainant and her husband bought and paid the purchase price for a 2/7 undivided interest in said land owned by Grace Sutton and Earl S. Roane, and 1/2 of 1/7 undivided interest owned by Emma Webster; that William Clyde Roane bought and paid the purchase price for the 2/7 undivided interest owned by Frank and Guy Roane, and 1/2 of 1/7 undivided interest owned by Emma Webster; that William Clyde Roane died on August 27, 1947, and by will devised his interest in the land to his nephew, Doswell Franklin Roane.

The bill further alleged that (a) by virtue of the six verbal contracts and by inheritance, complainant and Leland S. Roane became the joint owners of a 1/2 undivided interest, and William Clyde Roane became the owner of the other 1/2 undivided interest in the tract of land; (b) no deed conveying the undivided interest of Frank Roane, Guy Roane and Emma Webster to William Clyde Roane had been recorded; (c) Grace Sutton, Earl S. Roane and their consorts had executed deeds conveying their 2/7 undivided interests to Leland S. Roane and complainant; (d) Emma Webster and her husband had executed a deed, or joined in another deed, conveying 1/2 of her undivided interest to Leland S. Roane and complainant, but the three last named parties and their consorts refused to deliver the deeds so executed or to execute proper deeds conveying the property to complainant and her husband as they promised and agreed to do; (e) pursuant to the contracts, William Clyde Roane, Leland S. Roane and complainant took possession of the premises, paid the taxes and made extensive improvements thereon.

The prayer of the bill was "that complainant may have specific performance of the contracts of defendants, Grace Sutton, R. A. Sutton (her husband), Earl S. Roane, Florence Roane (his wife), Emma Webster and Ellis C. Webster (her husband) for the sale of their interests in the estate of Robert H. Roane, deceased; * * * to complainant and her husband * * * that complainant may have proper credit for improvements and repairs to said property made by her and her husband."

While the brothers and sisters alleged to have sold their interests to William Clyde Roane were made parties to the bill, no relief was sought against them or Doswell Franklin Roane.

Neither Frank Roane nor Doswell Franklin Roane, his son and devisee of William Clyde Roane, filed answers to the bill. The other four brothers and sisters and their consorts filed a joint answer, in which it was admitted that each had made a contract with Leland S. and William Clyde Roane regarding the sale of their interests in the home tract and had received the amount of the purchase price stated in the bill therefor, but that the terms of the contracts of sale were not as alleged. It was averred that the brothers and sisters agreed to sell their respective undivided interests to Leland S. and William Clyde Roane for and during their lives, with the proviso that the contracts would not be binding upon any unless all conveyed their shares in the property, and that since several of the brothers and sisters had refused to execute deeds to the property, none of them were bound by the agreement. Grace Sutton offered to return $500, Earl S. Roane $400, and Emma Webster $250 "to those entitled" thereto, such sums being the respective amounts each had received as the purchase price of his undivided interest from Leland S. Roane.

The issues raised by the pleadings were few and simple, to wit: (1) whether the contracts of sale to Leland S. and William Clyde Roane were made upon condition that no one of the five. brothers and sisters would be bound unless all were; (2) whether Grace Sutton, Earl S. Roane and Emma Webster had agreed to sell their undivided interests in fee, or whether they had agreed to sell their interests to Leland S. Roane for and during his natural life; (3) whether Mary A. Roane, as purchaser, acquired any interest in the land.

On these issues complainant took the depositions of eight witnesses, including that part of her deposition given on direct examination. Two of these witnesses—Grace Sutton and Guy Roane— were examined as adverse parties. The other five were disinterested parties. These depositions, and documentary evidence introduced, established the following facts:

(1) Earl S. Roane and his wife, in consideration of $400 paid him by Leland S. Roane, signed a paper writing bearing date December 11, 1937, and acknowledged on February 21, 1939, purporting to convey Earle S. Roane's 1/7 undivided interest in the land to Leland S. Roane and Mary A. Roane. This paper writing, while purporting to be a deed, contained no seal, was delivered to and accepted by the grantees, and retained by them

until some time in 1944 or 1945, when they sent it to Grace Sutton for recordation, but she did not have it recorded. After the death of Leland S. Roane and the institution of this suit, complainant requested Grace Sutton to give the paper to her, but instead of so doing, she sent it to Earl S. Roane, who was then living in New Jersey.

(2) Prior to 1937, Leland S. Roane loaned Grace Sutton $500, which indebtedness was cancelled in consideration of her agreement to sell and convey her 1/7 interest in the land to him.

(3) On or about October 24, 1945, Leland S. and William Clyde Roane caused a deed to be prepared, in which the five brothers and sisters and their consorts were named as grantors, purporting to convey in fee their undivided interests in the property to them. This deed was signed, but not acknowledged, by Grace Sutton and her husband, and left at a store in the neighborhood to be signed and acknowledged by the other grantors. However none of the other grantors executed it.

(4) Emma Webster agreed to sell 1/2 of her undivided interest in fee to Leland S. Roane for $250 and the other 1/2 interest for a like sum to William Clyde Roane. She accepted $250 from Leland S. Roane but executed no deed conveying her interest to either Leland S. or William Clyde Roane.

Complainant testified that William Clyde Roane bought and paid the full purchase price for the interests of Guy and Frank Roane; that Clyde Roane, in 1938, took possession of the property for himself, Leland S. Roane and complainant; that he assisted in making the repairs and improvements thereon, and helped to construct several new buildings on the premises; that she kept an accurate account of the amount her husband spent on taxes, repairs and improvements, but did not know what sums William Clyde Roane had expended for the same purpose; that he made his home there and supervised the making of the repairs and the operation of the farm; on Leland S. Roane's retirement in 1946, he and complainant moved upon the premises and there lived until his death.

The substance of the testimony of the five disinterested witnesses, introduced by complainant, is that on numerous occasions they heard William Clyde Roane say that he and his brother, Leland S. Roane, had together purchased the old home. Some of the expressions were that William Clyde and Leland S. Roane "had bought out the other legatees," "that they owned the home."

This was the status of the proof which tended to support most of the main allegations of the bill when, on April 13, 1949, complainant was recalled to the witness stand for the purpose of cross-examination. During this examination she testified that in 1932 she and her husband agreed to purchase, and the brothers and sisters agreed to sell and convey to them, all their interests in the land; that no part of the purchase price was paid until 1937; that during negotiations with the brothers and sisters William Clyde Roane said: "* * * instead of paying me for my share * * * let me make it a home with you all * * * 'The others owe me money, and I will never get it back, instead of paying them for their share let me settle it that way, and they won't have to pay. I will help you all to rebuild the home, if you let me come back and make a home with you and Leland.' "

Complainant's answers to questions propounded to her on cross-examination are very illuminating.[1] The substance of her

---

[1] "Q. Then is it your claim that Clyde Roane does not have any interest in this property which you claim was purchased from Mrs. Sutton?
"A. That is right.
"Q. Is it your claim that Clyde Roane does not have any interest in the property which was purchased from any other heir?
"A. That is right.
"Q. It is your position, as I understand it, then, the only interest which Clyde Roane owned in this property is the interest which he owned as the heir at law of his father, is that correct?
"A. Not even at that, because he said they sold the home to us, and he was to have a home there as long as he lived with us."
  *  *  *  *  *  *
"Q. What interest if any was he to get from these persons, to whom you said he paid money for the right to live in your home?
"A. He was to have his home with us as long as he lived.
"Q. That was all of his interest in the property, is that right?
"A. That is right.
"Q. It is your position, then, that the property and such interests if any as had been purchased from the other heirs, belonged to you and your husband, is that correct?
"A. Yes. My husband and I have bought that as a home.
"Q. And not to you and your husband and Clyde?
"A. Clyde was to have his home there only with us, as long as he lives."
  *  *  *  *  *  *
"Q. I understood you to say a minute ago that the deed should have been made to you and your husband?
"A. That is right.
"Q. And that the only interest which Clyde Roane had in the property was the privilege of living there during his lifetime?
"A. But Clyde was sick and he was so changeable then he was afraid he would be put out of a home, and he asked Leland to put his name in the deed.
"Q. Was that in order to insure that he could live there for his lifetime?
"A. Yes.

testimony is that William Clyde Roane paid for the interests of Frank and Guy Roane and the 1/2 interest of Emma Webster for the privilege of living on the farm for and during his natural life, and that he agreed that the interests acquired from his two brothers and sister, and the interest he inherited, should pass at his death to Leland S. Roane and complainant jointly; that Leland S. Roane intended, and verbally promised complainant, that the deeds by which he acquired the shares of his brothers and sisters, would be made to him and complainant jointly.

Complainant contends that the verbal agreements that William Clyde Roane made with her and her husband, Leland S. Roane, and the one made by her with her husband, created a tenancy by the entireties, with the right of survivorship as at common law.

Prior to the time that complainant was cross-examined, her pleadings consisted of her original bill and an amended and supplemental bill. It was stated in the supplemental bill that complainant adopted all the allegations of her original bill and that since the institution of the suit William Clyde Roane had died and devised his interest in the land to Doswell Franklin Roane, and prayed that Doswell Franklin Roane be made a defendant. If the attorney for complainant had examined the original bill he would have found that the same allegation had been made therein and that Doswell Franklin Roane was a party

"Q. And that is the full extent of his interest?
"A. That is right.
"Q. And the deeds which you are asking the Court to make to you, or to you and your husband for this property, are deeds which would only give to Clyde Roane a life interest in the property, is that right?
"A. That was the agreement, yes."

\* \* \* \* \* \*

"Q. Was that mentioned to Mrs. Sutton, that Clyde's interest there was only life interest?
"A. Right there in front of Mrs. Sutton in 1937 when he said instead of paying me Clyde says of instead of paying me for my share, says 'I will just give you my share and live with you all.' He said 'And help you pay for the others.' "

\* \* \* \* \* \*

"Q. Now about Mr. Frank Roane; what statement was made to Mr. Frank Roane as to who was buying the property?
"A. All I know that Leland and I were building the home.
"Q. Was that your understanding with Mr. Frank Roane?
"A. That is what he has been told by Clyde and also by my husband.
"Q. In your presence
"A. Yes."

to the suit. There were no new or additional averments or prayers in the supplemental bill.

The attorney for appellant, when confronted with the testimony of his client on cross-examination, which was clearly inconsistent with the allegations of her original and supplemental bills, and with the evidence she had introduced, filed for complainant a second amended and supplemental bill, containing allegations that conformed to the testimony she had given on cross-examination relating to the verbal contract made by William Clyde Roane, on the one hand, and complainant and her husband on the other, and the verbal contract made by complainant and her husband whereby the relationship of tenancy by the entireties was created between them.

The lower court was, and this court is now, confronted with an unusual situation. It is a well settled rule that in a suit for specific performance of parol agreements for the sale of land, the agreement relied upon must be certain and definite in its terms. The acts proven in part performance must refer to, result from, or be made in pursuance of the agreement proved. It must have been so far executed that refusal of full execution would operate a fraud upon the purchaser. *Truslow* v. *Ball,* 166 Va. 608, 186 S. E. 71.

A litigant should not prevail when he offers documentary evidence and testimony of disinterested witnesses to prove the terms and conditions of one verbal contract and then offers his own testimony in support of another containing terms and conditions wholly inconsistent with the first. Such inconsistent evidence falls far short of proving parol contracts for the sale of land with that degree of certainty and definiteness which is required to sustain a decree for specific performance.

While complainant testified that she and her husband paid that part of the purchase price alleged to have been paid to his three brothers and sisters, and that she and her husband paid for repairs and improvements made on the premises, the overwhelming weight of the evidence tends to show that Leland S. Roane and William Clyde Roane furnished all the money that was expended upon the place for the purposes named and that complainant furnished no part thereof.

The only substantial evidence tending to show that Leland S. Roane intended that title to the interest he acquired should be taken in the name of himself and wife is complainant's

own testimony and the deed executed by Earl S. Roane and his wife to them as tenants in common. Complainant relied upon a newspaper article and casual statements claimed to have been made by Leland S. Roane to the effect that he and his wife were buying the Roane place as a home for themselves. These statements are too indefinite to pass title from one party to another. They do not merit further discussion.

Survivorship between joint tenants is a right to a substantial interest in land and has been abolished by Code section 55-20. However, section 55-21 limits the provisions of section 55-20 abolishing such survivorship in certain cases. The pertinent exception in the statute is that the right of survivorship shall not be abolished "when it manifestly appears from the tenor of the instrument that it was intended the part of the one dying should then belong to the others."

Complainant introduced no instrument or testimony other than her own to prove that her husband agreed that the property should be conveyed to them as joint tenants with the right of survivorship. There was no corroboration of her testimony, written or oral, which tended in the slightest degree to support this alleged agreement or promise on the part of her husband. William Clyde and Leland S. Roane are dead and incapable of testifying to the contracts which complainant claimed they made with her. These facts bring complainant's testimony within the provisions of Code section 8-286 to the effect that "no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony."

Failure of complainant to prove the contracts on which she finally rested her case ordinarily would require the suit to be dismissed, but we are confronted with a cross-bill filed by Frank Roane and Doswell Franklin Roane in which it is alleged that William Clyde Roane bought and paid for the interests of Frank and Guy Roane, and 1/2 interest of Emma Webster. Frank Roane, in his cross-bill, acknowledged payment of the agreed purchase price and averred that he was ready and willing to convey his 1/7 undivided interest in fee to the devisee of William Clyde Roane. The prayer of the cross-bill was that the parties named above who had agreed to sell and convey their interests and received the purchase money, be compelled to perform their respective contracts by conveying the interests stated in

fee to Doswell Franklin Roane as the devisee of William Clyde Roane.

Before the case was submitted to the lower court, all respondents agreed that they would "resist the claims of Mary A. Roane seeking to establish a fee simple title to any part of the real estate," * * * and "Whatever of this real estate remains after the claim or interest therein of Mary A. Roane is finally determined will be owned and held" in the proportions set forth in the agreement. The lower court thereupon entered a decree declaring that Mary A. Roane owned a 1/14 undivided interest in fee and a life interest in 3/7 undivided interest, making no adjudication of the respective rights of respondents.

The six respondents assigned cross-error, contending that the court erred in failing to dismiss the suit at the cost of the complainant because she failed to establish the contracts upon which she finally rested her case, and that the evidence proved that complainant was only entitled to dower in the 1/7 undivided interest that her husband inherited from his father, and of which he died seized and possessed. These contentions were not urged at the oral argument and, in effect, were abandoned.

The preponderance of the evidence clearly supports the finding of the lower court. Complainant is in no position to question its correctness and appellees raise no serious objection thereto.

The decree is

*Affirmed.*